UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD, AND ERIK LIPTAK, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>       v.<br><br>MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, L.P.; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, L.P.,<br><br>             Defendants. | Case No. 1:20-CV-00632-JSR<br>Case No. 1:20-CV-01000-JSR<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT BOSTON RED SOX BASEBALL CLUB, L.P.'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Defendant Boston Red Sox
Baseball Club, L.P.*

February 21, 2020

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

CITATION AND ABBREVIATION CONVENTIONS.................................................. vi

PRELIMINARY STATEMENT ....................................................................... 1

APPLICABLE LAW ................................................................................... 2

ARGUMENT ........................................................................................... 2

I.      PLAINTIFFS' COMMON LAW FRAUD CLAIM FAILS (COUNT 9). ............. 2

        A.      Plaintiffs Fail to Identify Any Actionable Misrepresentation or
                Omission. ...................................................................................... 3

        B.      Plaintiffs Fail to Plead the Requisite Strong Inference of Scienter. ........... 8

        C.      Plaintiffs Fail Adequately to Plead Actual or Reasonable Reliance........... 9

        D.      Plaintiffs Fail to Plead Causation............................................................ 12

        E.      Plaintiffs Fail to Plead an Actionable Loss................................................ 13

II.     PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE
        (COUNT 11). ..................................................................................... 13

III.    PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT 12). ........... 15

IV.     PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE
        MASSACHUSETTS CONSUMER PROTECTION ACT (COUNT 10). ............. 15

        A.      Plaintiffs' Failure to File a Proper Pre-Suit Demand Requires
                Dismissal...................................................................................... 16

        B.      Plaintiffs Fail to Allege a Cognizable Injury under the MCPA................. 17

CONCLUSION........................................................................................... 20

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ames v. T-Mobile USA, Inc.*,
  No. 3:17-CV-01666-L-AGS, 2018 WL 3417516 (S.D. Cal. July 13,
  2018) ..................................................................................................................8

*A.S.J. Drugs, Inc. v. Berkowitz*,
  459 So.2d 348 (Fla. Dist. Ct. App. 1984) ....................................................3

*Baldino's Lock & Key Serv., Inc. v. Google, Inc.*,
  624 F. App'x 81 (4th Cir. 2015) ..................................................................6

*Beebe v. ePartners Inc.*,
  No. 8:05-CV-805-T-24EAJ, 2005 WL 8160338 (M.D. Fla.
  June 20, 2005) .............................................................................................4

*Benjamin v. Fremont Inv. & Loan*,
  No. 17-11727-PBS, 2018 WL 4017595 (D. Mass. Aug. 22, 2018) ...........17

*Bowers v. Federation Internationale de L'Automobile*,
  489 F.3d 316 (7th Cir. 2007) .....................................................................14

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001) ..........................................................................5

*Brown v. United States*,
  557 F.3d 1 (1st Cir. 2009) ..........................................................................13

*Butterworth v. Quick & Reilly, Inc.*,
  998 F. Supp. 1404 (M.D. Fla. 1998) ..........................................................12

*Castillo v. Tyson*,
  268 A.D.2d 336 (N.Y. App. Div. 1st Dep't 2000) ............................7, 11, 14

*Comley v. Media Planning Grp.*,
  108 F. Supp. 3d 6 (D. Mass. 2015) ..........................................................4, 5

*Coons v. A.F. Chapman Corp.*,
  460 F. Supp. 2d 209 (D. Mass. 2006) ........................................................13

*Coppola v. Smith*,
  935 F. Supp. 2d 993 (E.D. Cal. 2013) ........................................................13

*Cummings v. HPG Int'l, Inc.*,
  244 F.3d 16 (1st Cir. 2001) ..........................................................................4

*Davis v. Dawson, Inc.*,
    15 F. Supp. 2d 64 (D. Mass. 1998) .............................................................5

*Demoulas v. Demoulas Super Mkts., Inc.*,
    No. 902927B, 1993 WL 818844 (Mass. Super. Nov. 29, 1993) ................................12

*Effie Film, LLC v. Pomerance*,
    909 F. Supp. 2d 273 (S.D.N.Y. 2012).........................................................11

*Fredericks v. Rosenblatt*,
    667 N.E.2d 287 (Mass. App. Ct. 1996) .......................................................17

*Garber v. Legg Mason, Inc.*,
    347 F. App'x 665 (2d Cir. 2009) .............................................................11

*Glidepath Holding B.V. v. Spherion Corp.*,
    590 F. Supp. 2d 435 (S.D.N.Y. 2007)..........................................................8

*Goodman v. Kennedy*,
    556 P.2d 737 (Cal. 1976) ....................................................................5

*Hall v. Sea World Entm't, Inc.*,
    No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911 (S.D. Cal. Dec. 23,
    2015) .......................................................................................9

*Hershenow v. Enter. Rent-A-Car Co.*,
    840 N.E.2d 526 (Mass. 2006) .............................................................18, 19

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    MDL No. 09-2067-NMG, 2015 WL 3751422 (D. Mass. June 15,
    2015) ......................................................................................16

*In re Crown Ranch Dev. Ltd.*,
    No. 11-90052, 2012 WL 1072221 (Bankr. E.D. Tex. Mar. 29, 2012) .........................4

*In re Enron Corp. Sec., Derivative & Erisa Litig.*,
    762 F. Supp. 2d 942 (S.D. Tex. 2010) ........................................................3

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
    No. 2:15-ml-02639-RGK-PLA, 2017 WL 6520608 (C.D. Cal. Aug.
    25, 2017), *aff'd*, 942 F.3d 1160 (9th Cir. 2019)................................7, 14, 15

*In re Webber*,
    350 B.R. 344 (Bankr. S.D. Tex. 2006) .......................................................8

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
    822 F. Supp. 2d 368 (S.D.N.Y. 2011).........................................................9

*It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*,
  No. EDCV 08-367-VAP (JCRx), 2009 WL 10673157 (C.D. Cal. Sept.
  3, 2009) ............................................................................................................4

*Janis v. Pratt & Whitney Can., Inc.*,
  370 F. Supp. 2d 1226 (M.D. Fla. 2005) ....................................................13

*LMNO Cable Grp., Inc. v. Discovery Comms., LLC*,
  No. LA CV16-04543 JAK (SKx), 2017 WL 5479613 (C.D. Cal.
  June 1, 2017) ...................................................................................................4

*Marriott Int'l, Inc. v. Am. Bridge Bah., Ltd.*,
  193 So. 3d 902 (Fla. Dist. Ct. App. 2015) ...................................................5

*Mayer v. Belichick*,
  605 F.3d 223 (3d Cir. 2010)..................................................................7, 14

*MDVIP, Inc. v. Beber*,
  222 So. 3d 555 (Fla. Dist. Ct. App. 2017) ...................................................4

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda*,
  730 F.3d 1111 (9th Cir. 2013) ...................................................................12

*Reisman v. KPMG Peat Marwick LLP*,
  787 N.E.2d 1060 (Mass. App. Ct. 2003) .....................................................3

*Robinson Helicopter Co. v. Dana Corp.*,
  102 P.3d 268 (Cal. 2004) ..............................................................................3

*Rule v. Fort Dodge Animal Health, Inc.*,
  607 F.3d 250 (1st Cir. 2010).................................................................18, 20

*Saenz v. Gomez*,
  899 F.3d 384 (5th Cir. 2018) ......................................................................12

*Sfiraiala v. Deutsche Bank Aktiengesellschaft*,
  729 F. App'x 55 (2d Cir. 2018) ....................................................................9

*Shaulis v. Nordstrom, Inc.*,
  865 F.3d 1 (1st Cir. 2017)..........................................................17, 18, 19

*Stiles v. Wells Fargo Bank*,
  No. C-14-04169 DMR, 2014 WL 7146950 (N.D. Cal. Dec. 15, 2014)........................9

*Taylor v. Am. Chemistry Council*,
  576 F.3d 16 (1st Cir. 2009)...........................................................................5

iv

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)..........................................................................................8

*Tyler v. Michaels Stores, Inc.*,
    984 N.E.2d 737 (Mass. 2013) .............................................................16, 17

*White v. Cuomo*,
    No. 528026, 2020 WL 572843 (N.Y. App. Div. 3d Dep't Feb. 6, 2020) ...................10

*Williams v. Parker*,
    472 S.W.3d 467 (Tex. App. 2015)...........................................................13

**Statutes & Rules**

Massachusetts Consumer Protection Act (M.G.L. c. 93A)...............................................16

## CITATION AND ABBREVIATION CONVENTIONS

**Entities and Parties**

- "Boston Red Sox" or "Red Sox":  Defendant Boston Red Sox Baseball Club, L.P.

- "Houston Astros" or "Astros":  Defendant Houston Astros, LLC

- "MLB":  Defendant Major League Baseball

- "MLBAM":  Defendant MLB Advanced Media, L.P.

- "MLB Defendants":  MLB and MLBAM

- "Plaintiffs":  Named plaintiffs Kristopher R. Olson, Christopher Lopez, Warren Barber, Christopher Clifford and Erik Liptak, together with the putative classes they purport to represent

**Terms**

- "Complaint" or "Am. Compl.":  The Amended Class Action Complaint filed in this matter on February 14, 2020

- "DFS":  Daily fantasy sports

- "Ex. __":  Exhibits to the February 21, 2020 Declaration of Lauren A. Moskowitz in Support of Defendant Boston Red Sox Baseball Club, L.P.'s Motion to Dismiss, filed concurrently herewith

- "MCPA":  The Massachusetts Consumer Protection Act (M.G.L. c. 93A)

- "MLB Brief" or "MLB Br. __":  Defendant Major League Baseball and MLB Advanced Media LP's Memorandum of Law in Support of Their Motion to Dismiss, dated February 21, 2020, filed concurrently herewith

## PRELIMINARY STATEMENT

Plaintiffs in this matter seek to recover their bets on DraftKings fantasy baseball contests on the basis that MLB teams with whom they had no contractual or any other relationship had a responsibility to ensure that the fantasy game the Plaintiffs played was fair. Plaintiffs may get points for originality, but their claims are based on fatally flawed premises. *First*, in light of allegations that began to be revealed in November 2019 that the Houston Astros and later that the Boston Red Sox engaged in electronic sign-stealing, Plaintiffs assert that, if only they had known of the possibility that the performance metrics that determine a contestant's standing in fantasy baseball competitions could ever be affected by actions taken in violation of MLB rules, they never would have agreed to participate in those contests. *Second*, Plaintiffs claim that MLB, the Houston Astros and the Boston Red Sox owed them a duty, not just to report performance metrics accurately, but to ensure that those metrics (the homeruns, hits, RBIs, strike-outs, ERA, etc. that a selected player actually achieved) were obtained only through what the Plaintiffs consider to be "fair" and "legitimate" means in accordance with all MLB rules.

But as Plaintiffs themselves allege, similar accusations of electronic sign-stealing to those revealed in November 2019 were made and publicly reported no fewer than three other times during the asserted class period in 2017 and 2018. That Plaintiffs nonetheless participated in fantasy baseball contests against that factual backdrop flatly refutes any assertion that their participation was premised on any assumption about the purported immunity of player performance metrics from any MLB rule violations.

Every court that has been faced with similar claims by disappointed fans who have asserted that they were entitled not just to witness the spectacle of competitive sport but to expect a specific intensity or quality of play or compliance with certain rules or disclosures of

material information has roundly rejected such a claim, recognizing that those types of issues are best resolved on the field and not in the courtroom.  The same result should obtain here.

In an effort to reduce duplication and burden on the Court, the Red Sox has endeavored to focus its motion to dismiss on the points of fact and law that are particularly relevant to Plaintiffs' claims against the Red Sox.  As to the arguments that apply more generally, the Red Sox incorporates herein those arguments presented in the MLB Brief.  With respect to the relevant factual background and legal standards applicable to these motions to dismiss, the Red Sox also incorporates the recitation set forth in the MLB Brief.  (MLB Br. 3-8.)

## APPLICABLE LAW

Plaintiffs purport to assert common law claims of fraud, negligence and unjust enrichment against the Red Sox under "the laws of Massachusetts, California, Texas and Florida, and the substantially similar laws of [an additional 44 states plus D.C.]".  (Am. Compl. ¶ 148.)  Without conceding that anything other than Massachusetts law governs those claims against the Red Sox, this brief addresses Plaintiffs' common law claims across all states, with a particular focus on Massachusetts, California, Texas and Florida, which Plaintiffs call out specifically.

## ARGUMENT

Each of Plaintiffs' claims fails for the reasons set forth in the MLB Brief, which we incorporate as if fully set forth herein, and for the additional reasons below.[1]

## I.    PLAINTIFFS' COMMON LAW FRAUD CLAIM FAILS (COUNT 9).

To recover in an action for common law fraud, a plaintiff must demonstrate that (1) defendant made a misrepresentation of fact, (2) that was material, (3) knowingly and for the purpose of inducing the plaintiff to act thereon, (4) that the plaintiff actually and justifiably relied

---

[1] For reasons set forth in the MLB Brief (MLB Br. 15 n.11), the Red Sox reserve their right to move to compel arbitration if any of Plaintiffs' claims survives this motion to dismiss.

upon, and (5) that caused the plaintiff injury.  *See Reisman v. KPMG Peat Marwick LLP*, 787

N.E.2d 1060, 1066–67 (Mass. App. Ct. 2003); *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d

268, 274 (Cal. 2004); *In re Enron Corp. Sec., Derivative & Erisa Litig.*, 762 F. Supp. 2d 942,

966 (S.D. Tex. 2010);[2] *A.S.J. Drugs, Inc. v. Berkowitz*, 459 So.2d 348, 349 (Fla. Dist. Ct. App.

1984).  Plaintiffs' fraud claim against the Red Sox fails on each of these elements.

### A.      Plaintiffs Fail to Identify Any Actionable Misrepresentation or Omission.

<u>No Misrepresentation.</u>  Plaintiffs premise their fraud claim against the Red Sox on

three purported misrepresentations:  (1) that when the Red Sox agreed to the MLB constitution,

they "expressly represented . . . that defendant Red Sox and its players would adhere to MLB's

rules and regulations" (Am. Compl. ¶ 465), as did team coaches and players when they signed

employment agreements with the Red Sox (*id.* ¶ 466); (2) that the Red Sox "made repeated

statements in 2017, 2018 and 2019 asserting that the team's players' performance success was

the result of player talent or other legitimate baseball factors" (*id.* ¶ 472); and (3) that MLB

Commissioner Rob Manfred made repeated public statements—according to Plaintiffs as

authorized agent of the Red Sox and all other MLB teams—"committing MLB to protecting the

integrity and honesty of the game of baseball, including in making sure that appropriate

safeguards were in place to insure [sic] that fantasy baseball wagering competitions were fair"

(*id.* ¶ 483).  None of those statements is actionable as fraud.

*First*, there is no basis to conclude that a promise made by one party to another in

a private contract (*i.e.*, the MLB constitution or an individual player's or coach's employment

agreement) constitutes a "representation" that can give rise to a fraud claim by a complete

stranger to that agreement.  Even if Plaintiffs could get past that hurdle, the law is clear that a

---

[2] Unless otherwise stated, the federal court decisions cited herein with respect to the elements of Plaintiffs' common law claims are applying the law of the state in which they sit.

promise of future performance is not actionable as fraud unless the person making such representation believed it to be false at the time it was made.  *Comley v. Media Planning Grp.*, 108 F. Supp. 3d 6, 15 n.13 (D. Mass. 2015); *LMNO Cable Grp., Inc. v. Discovery Comms., LLC*, No. LA CV16-04543 JAK (SKx), 2017 WL 5479613, at *7 (C.D. Cal. June 1, 2017); *In re Crown Ranch Dev. Ltd.*, No. 11-90052, 2012 WL 1072221, at *5 (Bankr. E.D. Tex. Mar. 29, 2012); *Beebe v. ePartners Inc.,* No. 8:05-CV-805-T-24EAJ, 2005 WL 8160338, at *3 (M.D. Fla. June 20, 2005).  Plaintiffs fail to set forth any facts at all to support such an inference here.

   *Second*, Plaintiffs entirely mischaracterize the statements in which they claim that the Red Sox asserted "that the team's players' performance success was the result of player talent or other legitimate baseball factors".  (Am. Compl. ¶ 472.)  Even a brief review of the statements in question (*id.* ¶ 111) reveals that they represent general commentary on the team's actual performance (that they were achieving "good at-bats" or doing "an outstanding job")—not any profound analysis or attribution of the causes of such performance.  Moreover, even if those statements did address the causes of the team's performance, it is clear on their face that, as a matter of law, they constitute the sort of vague, generic, opinion-based puffery that uniformly has been held inactionable as fraud.  *See, e.g.*, *Cummings v. HPG Int'l, Inc.*, 244 F.3d 16, 21-22 (1st Cir. 2001); *It's Just Lunch Int'l LLC v. Island Park Enter. Grp., Inc.*, No. EDCV 08-367-VAP (JCRx), 2009 WL 10673157, at *4 (C.D. Cal. Sept. 3, 2009); *Crown Ranch*, 2012 WL 1072221, at *5; *MDVIP, Inc. v. Beber*, 222 So. 3d 555, 561 (Fla. Dist. Ct. App. 2017).

   *Third*, statements by Commissioner Manfred about protecting the integrity of the game—which Plaintiffs mischaracterize—are likewise inactionable for reasons discussed in the MLB Brief.  (MLB Br. Section I.C.)  At most, they are inactionable statements regarding future

performance, which are not alleged to have been false when made (and even if that allegation were present, it would be implausible on its face).  *See Comley*, 108 F. Supp. 3d at 15 n.13.

        <u>No Omission.</u>  Plaintiffs also allege that the Red Sox's failure to disclose electronic sign-stealing constituted an actionable omission.  As a general matter, "[m]ere nondisclosure, absent a duty to speak . . . will not support any cause of action for misrepresentation".  *Davis v. Dawson, Inc.*, 15 F. Supp. 2d 64, 137 (D. Mass. 1998).  A duty to speak generally arises only where:  "(i) there is a fiduciary or other similar relation of trust and confidence, (ii) there are matters known to the speaker that he knows to be necessary to prevent his partial or ambiguous statement of the facts from being misleading, or (iii) the nondisclosed fact is basic to, or goes to the essence of, the transaction".  *Taylor v. Am. Chemistry Council*, 576 F.3d 16, 31 (1st Cir. 2009); *see also Bradford v. Vento*, 48 S.W.3d 749, 756 (Tex. 2001); *Goodman v. Kennedy*, 556 P.2d 737, 745 (Cal. 1976); *Marriott Int'l, Inc. v. Am. Bridge Bah., Ltd.*, 193 So. 3d 902, 908 (Fla. Dist. Ct. App. 2015).

        Here, Plaintiffs claim that a duty on the part of the Red Sox to disclose the possibility that alleged electronic sign-stealing could impact player performance metrics arose from two sources:  (1) the Red Sox directly or indirectly making the categories of alleged misrepresentations already discussed above (Am. Compl. ¶¶ 490, 492); and (2) the Red Sox allowing the placement of DraftKings signage and otherwise participating in unspecified promotional activities to induce members of the public to engage in DraftKings MLB DFS wagering competitions (*see id.* ¶¶ 5-6) with the knowledge that such competitions were purportedly unfair (*id.* ¶ 478).  Neither gives rise to a duty to speak under any of the three factors set forth above.

*First*, Plaintiffs do not identify any basis to conclude that public statements or marketing activities could give rise to a fiduciary relationship between the Red Sox and unrelated individuals who chose to do business with DraftKings, a third party.

*Second*, for reasons addressed above, none of the affirmative statements that Plaintiffs attempt to attribute to the Red Sox constituted representations of present material fact. As a result, none could have been transformed into an actionable false or misleading statement by a failure to disclose the alleged existence of electronic sign-stealing.  Regarding the unspecified promotional activities in which Plaintiffs allege the Red Sox engaged, Plaintiffs fail to identify any purported material statement of fact by the Red Sox during the course of those activities that was or could have been rendered misleading by the failure to disclose electronic sign-stealing.  Moreover, they have provided no basis to conclude that permitting the placement of a DraftKings logo or other signage on a stadium could constitute a "statement" of fact by the Red Sox at all.  *See, e.g.*, *Baldino's Lock & Key Serv., Inc. v. Google, Inc.*, 624 F. App'x 81, 82 (4th Cir. 2015) (Lanham Act claim based on allowing allegedly misleading advertisements to be displayed on defendant's websites dismissed because plaintiff "failed to show that the Defendants made any representations").

*Third*, Plaintiffs cannot rely on the third factor—that a nondisclosed fact is basic to, or goes to the essence of, the transaction—because there is no allegation of a transaction between the Red Sox and Plaintiffs.  In any event, as discussed below (Sections I.C and I.D), the alleged nondisclosed fact—the known possibility that player performance statistics could be impacted by rule infractions—does not go to the essence of participation in DFS contests.

Courts faced with similar claims repeatedly have rejected the notion that sports teams, participants and organizers have a duty publicly to disclose even material information that

6

could affect the quality, intensity or fairness of athletic competition.  These cases are also addressed at length in the MLB Brief, but they merit some discussion here as well.  For example, in *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, No. 2:15-ml-02639-RGK-PLA, 2017 WL 6520608, at *9 (C.D. Cal. Aug. 25, 2017), *aff'd*, 942 F.3d 1160 (9th Cir. 2019), a class action brought by disappointed attendees, pay-per-view purchasers and closed-circuit distributors of a championship boxing match, the court refused to recognize a duty to disclose a serious shoulder injury that Pacquiao suffered before the match that rendered him unable to fight in accordance with his usual ability, despite statements by promoters that Pacquiao looked "really good", was in "great shape", and was "super confident and relaxed".

In *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), a class action brought by an aggrieved New York Jets season ticket holder against the New England Patriots and the NFL based on the Patriot's surreptitious use of videotape to capture their opponents' signals, the court concluded that the plaintiff class did not have a cognizable legal interest in disclosure of anything about the methods of game play, even where they were in violation of NFL rules.

And in *Castillo v. Tyson*, 268 A.D.2d 336, 336-37 (N.Y. App. Div. 1st Dep't 2000), despite allegations of a premeditated plan by the boxer to disqualify himself if he was losing, the court dismissed fraud and other claims related to a match in which Mike Tyson bit part of his opponent's ear off, in part because plaintiff fans were aware that the governing rules provided for disqualification and thus, understood there was a possibility that a fight would indeed end in disqualification for violations of those governing rules.

The fact that the present case involves the subset of baseball fans that attempt to monetize their fandom by participating in DFS contests changes nothing.  The fans at issue in the aforementioned cases paid money for their tickets or pay-per-view licenses, just like the

Plaintiffs here paid entry fees to participate in DFS contests.  And like the plaintiffs in those cases, Plaintiffs here got exactly what they paid for—the right to participate in a contest whose winner was determined by the actual performance metrics of the lineup they selected.

Nor does the Red Sox's supposed promotion of DraftKings DFS contests in any way distinguish this case from those cases.  In each of those cases, defendants actively promoted and solicited viewership of the events in question by the plaintiff fans, to defendants' financial benefit, and did so in a manner far more direct than anything the Red Sox are alleged to have done here with respect to a set of DFS participants with whom they were not even in contractual privity.  Plaintiffs fail to provide any basis to deviate from the outcome dictated by those cases.

**B.  Plaintiffs Fail to Plead the Requisite Strong Inference of Scienter.**

To plead a "strong inference" of scienter, a plaintiff's theory "must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations.  A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Glidepath Holding B.V. v. Spherion Corp.*, 590 F. Supp. 2d 435, 451-52 (S.D.N.Y. 2007) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)).  "Intent to defraud means an intent to induce reliance on the misrepresentation."  *Ames v. T-Mobile USA, Inc.*, No. 3:17-CV-01666-L-AGS, 2018 WL 3417516, at *4 (S.D. Cal. July 13, 2018); *see also In re Webber*, 350 B.R. 344, 372 (Bankr. S.D. Tex. 2006) ("[Plaintiff] must also establish that [defendant] intended for the [plaintiff] to rely on the representations and go forward with the stock purchase.").

Here, Plaintiffs do not allege facts giving rise to a strong inference that the purported fraud was perpetrated for the purpose of inducing the Plaintiffs to act.  The notion that the Red Sox players and coach alleged to have perpetrated the electronic sign-stealing

(Am. Compl. ¶¶ 108, 468-470, 476) were motivated, not by a competitive desire to win, but by a desire to induce class members to participate in fantasy contests, is implausible on its face. Plaintiffs do not allege facts suggesting that those individuals had an awareness of or interest in DraftKings, much less that they would benefit from class members deciding to participate in DraftKings. *See, e.g.*, *Sfiraiala v. Deutsche Bank Aktiengesellschaft*, 729 F. App'x 55, 57-58 (2d Cir. 2018) (holding that pleading of scienter as to defendant company was deficient where the complaint failed "to allege how any of the individual defendants personally benefited from making the alleged misrepresentations"). Plaintiffs' failure to set forth facts giving rise to a plausible inference of scienter, much less the requisite strong inference of scienter, is fatal to Plaintiffs' common law fraud claim.

### C.     Plaintiffs Fail Adequately to Plead Actual or Reasonable Reliance.

Plaintiffs make only the barest, conclusory allegation that "Plaintiffs and the Classes reasonably and justifiably relied in participating in DraftKings' MLB DFS wagering competitions on the false statements, representations and commitments by defendant Red Sox and Manfred set forth herein . . . ." (Am. Compl. ¶ 492.) That is insufficient. *See Int'l Fund Mgmt. S.A. v. Citigroup Inc.*, 822 F. Supp. 2d 368, 386-87 (S.D.N.Y. 2011) (dismissing fraud claim based on conclusory allegations of reliance). Plaintiffs "must allege the specifics of . . . [their] reliance on the misrepresentation[s] to show a bona fide claim of actual reliance". *Stiles v. Wells Fargo Bank*, No. C-14-04169 DMR, 2014 WL 7146950, at *5 (N.D. Cal. Dec. 15, 2014). Here, Plaintiffs plead no facts to support that the named Plaintiffs actually read, heard or otherwise reviewed any of the allegedly fraudulent statements. That alone defeats Plaintiffs' common law fraud claim. *See generally Hall v. Sea World Entm't, Inc.*, No. 3:15-CV-660-CAB-RBB, 2015 WL 9659911, at *15-17 (S.D. Cal. Dec. 23, 2015) (actual reliance element required plaintiffs to allege that they "actually saw or read" the challenged ads before making a purchase).

Moreover, Plaintiffs do not set forth facts establishing, as they must, that such reliance was objectively reasonable or justifiable.  Here, Plaintiffs contend that they were entitled to rely, not only that the DraftKings contests would be determined in accordance with the actual performance metrics achieved by the players in their lineups—which Plaintiffs do not dispute worked as expected—but that they were entitled to rely on specific assumptions about the *means* through which those metrics would be achieved.  (Am. Compl. ¶¶ 13, 478.)  Namely, Plaintiffs allege that they assumed the metrics would be achieved exclusively through "legitimate performance ability".  (*Id.* ¶ 480.)  This is implausible and refuted by Plaintiffs' own allegations and matters of public record (*see infra* notes 3-5 and accompanying text).

As an initial matter, Plaintiffs' apparent assumption that performance in baseball can be predicted with precision based on past performance metrics ignores the element of chance that is a feature of every sport, and of wagering on any sport.  As the New York Appellate Division, Third Department, recently stated:

> [A]lthough participants in IFS contests may use their skill in selecting teams, they cannot control how the athletes on their IFS teams will perform in the real-world sporting events.  For example, those performances could be affected by such disparate circumstances as, among other things, player injury or illness, unexpected weather conditions, poor officiating, a selected player having a particularly bad day or an unselected player having a surprisingly good day. In other words, the skill level of an IFS contestant cannot eliminate or outweigh the material role of chance in IFS contests.

*White v. Cuomo*, No. 528026, 2020 WL 572843, at *4 (N.Y. App. Div. 3d Dep't Feb. 6, 2020).

It also ignores the unquantifiable role of routine competitive practices like sign-stealing *without* the use of electronic devices that, while not based on a player's athletic prowess, are accepted and fully compliant with MLB rules.  (*See* Am. Compl. ¶ 55 (acknowledging that it is the use of electronic devices and not sign-stealing in and of itself that is prohibited).)

Moreover, Plaintiffs' professed reliance on the belief that performance metrics would never be impacted by an action taken in violation of an MLB rule is patently *unreasonable*.  Indeed, the very existence of a set of rules and the power to remedy violations recognizes the inescapable fact that violations can and do occur.  *See Castillo*, 268 A.D.2d at 336-37 (availability of disqualification mechanism put fans on notice that disqualification was a possibility).  Tellingly, as Plaintiffs likewise reference in the Complaint (*see, e.g.*, Am. Compl. ¶¶ 1, 106), they would have been aware, as a matter of public record, that even very serious violations, like steroid use, typically have been remedied with fines or suspensions, not through revisions of metrics previously achieved.[3]  Thus, Plaintiffs' assertion that they relied on the notion that performance metrics could never be affected by anything other than a player's pure athletic prowess is not just implausible, it is pure fiction.

Also of particular note is the fact that, as Plaintiffs once again acknowledge in the Complaint (*id.* ¶ 114), there were at least three other allegations of electronic sign-stealing rules violations by the Red Sox and Astros that were publicly reported at or near the time they occurred during the purported class period.[4]  In the one instance involving the Red Sox, it was publicly reported on September 15, 2017 that the Red Sox was fined by MLB as a result of that violation.[5]  Yet, as evidenced by the fact that the proposed class period extends to October 30,

---

[3] *See, e.g.*, Bob Nightengale, MLB Toughens Drug Agreement Provisions, USA TODAY (March 28, 2014) (Ex. 1).  On a motion to dismiss, the Court properly may take judicial notice of news articles to establish the information that existed in the public domain during the relevant time period.  *Garber v. Legg Mason, Inc.*, 347 F. App'x 665, 669 (2d Cir. 2009); *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012).

[4] Michael S. Schmidt, *Boston Red Sox Used Apple Watches to Steal Signs Against Yankees*, N.Y. Times (Sept. 5, 2017) (Ex. 2); Anita Balakrishnan, *MLB Fines Red Sox and Yankees for Improper Use of Technology in Games*, CNBC (Sept. 15, 2017) (Ex. 3); Adam Zielonka, *Indians Warned Red Sox About Astros' Sign-Stealing Attempt*, AP News (Oct. 17, 2018) (Ex. 4).

[5] Balakrishnan, *supra* note 4 (Ex. 3).

2019, the named Plaintiffs and putative class members continued to participate in DraftKings fantasy competitions.  That not only refutes the contention that Plaintiffs relied on an assumption about the perceived purity of player performance metrics in deciding to participate in fantasy contests *after* those public reports were made, it suggests that no such assumption was *ever* a significant factor in Plaintiffs' decision to participate.

        **D.**      **Plaintiffs Fail to Plead Causation.**

        For reasons similar to Plaintiffs' failure to plead reasonable reliance, Plaintiffs fail adequately to plead the required element of causation.  The tort concept of "causation" encompasses two distinct elements, actual or "transaction" causation—*i.e.*, that, but for the fraud, the plaintiff would not have engaged in the transaction in question—and proximate or "legal" causation.  *See, e.g.*, *Nuveen Mun. High Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1118–19 (9th Cir. 2013); *Butterworth v. Quick & Reilly, Inc.*, 998 F. Supp. 1404, 1411 (M.D. Fla. 1998); *see also Demoulas v. Demoulas Super Mkts., Inc.*, No. 902927B, 1993 WL 818844, at *2 (Mass. Super. Nov. 29, 1993); *Saenz v. Gomez*, 899 F.3d 384, 393 (5th Cir. 2018).

        Here, Plaintiffs' own allegations refute any contention of actual causation. Plaintiffs assert that the Red Sox's alleged fraudulent representations and omissions concealing the existence of electronic sign-stealing induced Plaintiffs to participate in DraftKings DFS competitions and that they would not have participated in such competitions had they known of the possibility that the performance metrics were or could be "corrupted" by violations of MLB rules.  (Am. Compl. ¶¶ 491-94.)  But again, there were no fewer than three instances of public reporting of electronic sign-stealing in violation of MLB rules during the class period, involving the very same teams at issue here.  (*Id*. ¶ 114.)  Yet Plaintiffs freely admit that they continued to participate in DraftKings DFS competitions.  This refutes the fundamental premise of their causation theory.

### E.  Plaintiffs Fail to Plead an Actionable Loss.

Plaintiffs' fraud claim against the Red Sox also fails for the additional reason that, as discussed in the MLB Brief, Plaintiffs fail to plead that they actually suffered any losses resulting from Defendants' alleged conduct.  (MLB Br. Section III.)

## II.  PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENCE (COUNT 11).

To state a claim for negligence, a plaintiff must adequately allege:  (1) a legal duty to exercise due care, (2) a breach of such legal duty, (3) causation, and (4) damages.  *See Coons v. A.F. Chapman Corp.*, 460 F. Supp. 2d 209, 218 (D. Mass. 2006); *Coppola v. Smith*, 935 F. Supp. 2d 993, 1013 (E.D. Cal. 2013); *Williams v. Parker*, 472 S.W.3d 467, 470 (Tex. App. 2015); *Janis v. Pratt & Whitney Can., Inc.*, 370 F. Supp. 2d 1226, 1229 (M.D. Fla. 2005).

Here, Plaintiffs' negligence claim is based on the theory that the Red Sox had a responsibility to ensure that its players and coaches complied with MLB rules, and that in failing to prevent the alleged electronic sign-stealing, the Red Sox breached a duty owed to Plaintiffs to ensure the fairness of DraftKings fantasy baseball competitions.  (Am. Compl. ¶¶ 533-44.)  This claim suffers from many of the same flaws as the fraud claim discussed above, including failure of causation and damages.

Plaintiffs' negligence claim also should be dismissed because they fail adequately to allege that the Red Sox owed them any legal duty of care.  Generally, a duty of care arises when it is reasonably foreseeable that the harm alleged would result from the defendants' conduct.  *See Brown v. United States*, 557 F.3d 1, 4 (1st Cir. 2009).  Here, Plaintiffs allege that, despite the complete absence of any contractual or other relationship between them (*see* MLB Br. Section II.A), the Red Sox had a legal duty to Plaintiffs to ensure that the DraftKings DFS competitions were "fair" (Am. Compl. ¶ 541), which Plaintiffs argue means that the performance metrics achieved would be the result solely of "legitimate performance ability" (*id.* ¶ 480).

13

However, as discussed above, courts faced with similar claims uniformly have rejected the notion that sports fans have a legally cognizable interest in the quality or intensity of athletic performance presented or the means through which that performance is achieved.  *See Mayer*, 605 F.3d at 230 (no legal right to a game free from sign-stealing in violation of NFL rules); *Pacquiao-Mayweather*, 2017 WL 6520608, at \*9 (no right to a fight free from the impact of an undisclosed injury); *Bowers v. Federation Internationale de L'Automobile*, 489 F.3d 316, 322 (7th Cir. 2007) (no right to a race that was "exciting" or drivers that "competed well"); *Castillo*, 268 A.D.2d at 336-37 (no right to a fight free of conduct that resulted in disqualification).  Stated differently, the participants and promoters had no legal duty to do anything other than permit the fans to watch the event that actually transpired.

Those prior decisions are premised on compelling policy regarding the ill effects of allowing our uniquely American brand of over-litigiousness to infect the province of competitive sports.  If one accepts Plaintiffs' premise that it is the responsibility of professional sports leagues and teams to guarantee the fairness of the sports betting in which unrelated individuals choose to engage, it is not difficult to envision the consequences that may follow.  The current set of Plaintiffs suggests that a practice is "unfair" to DFS participants if it is prohibited by MLB rules (which are a matter of private contract between the league and its member teams to which Plaintiffs are not a party).  But the next set of plaintiffs may allege that a blown call is unfair; or that reading pitch tipping is unfair; or that countless other competitive tactics that are not prohibited by MLB rules are unfair; or that a star player's injury or personal trauma or any other strategic strength or weakness potentially affecting the team's prospects must be disclosed in order to ensure that betting on the game is "fair" and fully informed.  The court in *Pacquiao-Mayweather* articulated this slippery slope:

14

> A holding in favor of Plaintiffs in this case could be construed to require near total transparency in sports, whereby any inflated, unreliable, or cryptic pre-event statements would beget lawsuits. Gone would be the days of headstrong athletes declaring their complete readiness to destroy their opponents. Athletes would never again publicly predict that they will prevail, or even conclude that an event will be exciting. Sports teams and athletes might even be required to disclose the weak spots in their game plans or preparations before every event for all to see (including their opponents). The Court refuses to so disrupt the nature and integrity of competitive sports.

*Pacquiao-Mayweather*, 2017 WL 6520608, at *9.

For reasons discussed in Section I.A, above, nothing about this case in any way distinguishes the above line of cases. Thus, Plaintiffs fail plausibly to allege that the Red Sox owed them any duty at all with respect to the specific means through which the player performance metrics on which the DFS contests depended were or would be achieved. Plaintiffs' negligence claim therefore should be dismissed.

## III.   PLAINTIFFS' UNJUST ENRICHMENT CLAIM FAILS (COUNT 12).

Plaintiffs' unjust enrichment claim likewise fails. As explained in the MLB brief, it is a matter of black letter law that a party with an adequate remedy at law cannot claim unjust enrichment. (*See* MLB Br. Section IV.B.) In addition, an independent cause of action for unjust enrichment does not even exist under California or Texas law. (*Id*.) Finally, Plaintiffs' unjust enrichment claim also fails based on the absence of any direct relationship between Plaintiffs and the Red Sox (*see* MLB Br. Section II.B) and for failure to plead an actionable loss as with the other common law claims (*see* MLB Br. Section III).

## IV.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER THE MASSACHUSETTS CONSUMER PROTECTION ACT (COUNT 10).

The claim against the Red Sox under the Massachusetts Consumer Protection Act (M.G.L. c. 93A) ("MCPA") asserted by Plaintiff Olson—the only named Plaintiff that purports to sue the Red Sox under the MCPA (Am. Compl. ¶ 150)—fails. To state a claim under the

MCPA, a plaintiff must allege three elements, that he (1) suffered an injury (2) that was caused by (3) an unfair or deceptive act or practice. *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, MDL No. 09-2067-NMG, 2015 WL 3751422, at *8 (D. Mass. June 15, 2015) (citing *Tyler v. Michaels Stores, Inc.*, 984 N.E.2d 737, 744 (Mass. 2013)).

   For the reasons set forth above and in Sections I and III of the MLB Brief that address these elements across multiple consumer protection laws including Massachussetts, which the Red Sox incorporates herein by reference, Plaintiff Olson's MCPA claim fails because: (1) Plaintiffs fail adequately to allege the existence of any "unfair" or "deceptive" act or practice (*see* MLB Br. Section I; *supra* Section I.A); (2) Plaintiffs fail adequately to plead causation (MLB Br. Section III.B; *supra* Section I.D); and (3) Plaintiffs fail to allege that they actually lost any money as a result (MLB Br. Section III.A; *supra* Section I.E).

   Plaintiff Olson's MCPA claim also should be dismissed based on:  (1) his failure to serve a compliant pre-suit demand letter; and (2) his failure to allege a cognizable injury as required under applicable case law interpreting the MCPA.

  **A.**  **Plaintiffs' Failure to File a Proper Pre-Suit Demand Requires Dismissal.**

   Under M.G.L. c. 93A § 9(3), a plaintiff is required, at least thirty days prior to filing suit under the MCPA, to mail or deliver a "written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered".  The purpose of the pre-suit demand requirement is to "give defendants an opportunity to review the facts and the law involved . . . and to enable them to make a reasonable tender of settlement in order to limit the recoverable damages".  *Fredericks v. Rosenblatt*, 667 N.E.2d 287, 289 (Mass. App. Ct. 1996).  Accordingly, the instructions for the demand letter on the Massachusetts government website state that the letter should specify "[t]he demanded relief

including the amount of money you are demanding to recover". (*See* https://www.mass.gov/service-details/30-day-demand-letter (last visited Feb. 20, 2020).)

Here, Plaintiff Olson's demand letter is dated January 23, 2020, the same day he filed suit, instead of the 30 days before suit called for by the statute. Moreover, the demand letter fails to include any calculation whatsoever of his alleged damages.

Failure to send a demand letter compliant with § 9(3) is sufficient ground to justify dismissal of a plaintiff's MCPA claim. *Benjamin v. Fremont Inv. & Loan*, No. 17-11727-PBS, 2018 WL 4017595, at *5 (D. Mass. Aug. 22, 2018). However, if the Court is disinclined to grant dismissal on this basis, Plaintiff Olson should, at a minimum, be ordered promptly to specify the amount of damages he claims to have suffered, including the amount of all entry fees he paid to DraftKings for fantasy baseball contests during the class period and the amount of any proceeds he received from DraftKings as a result of his participation in those contests.

**B.    Plaintiffs Fail to Allege a Cognizable Injury under the MCPA.**

Plaintiff Olson's MCPA claim fails for the additional reason that the harm that he alleges—that he was induced to pay entry fees to participate in "corrupt and dishonest fantasy baseball competitions" (Am. Compl. ¶ 527)—is not a cognizable "injury" under the MCPA. To state a viable claim of injury under the MCPA, a plaintiff must allege that he suffered an "identifiable harm" caused by the unfair or deceptive act that is distinct from the violation itself. *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) (quoting *Tyler*, 984 N.E.2d at 745). Thus, "[i]t is not enough to claim that the defendant's improper conduct created a *risk* of 'real economic damages'", the plaintiff must show that he actually suffered some such harm. *Id*. (quoting *Rule v. Fort Dodge Animal Health, Inc.*, 607 F.3d 250, 253 (1st Cir. 2010)).

Several cases that have analyzed claims of "injury" under the MCPA are instructive. In *Shaulis*, the named plaintiff purchased a sweater at a Nordstrom Rack outlet store

for which the tag listed both the purchase price of $49.97 and a higher "Compare At" price of $218.  *Id.* at 5.  The plaintiff alleged that her purchase was induced by deception because the garment in question had been manufactured exclusively for sale at Nordstrom's outlet store and was never intended to be sold at the higher "Compare At" price.  *Id*.  The injury alleged was the loss of the $49.97 purchase price because plaintiff claimed that she never would have purchased the sweater if she knew of Nordstrom's deception.  *Id.* at 10.  Similarly, in *Hershenow v. Enterprise Rent-A-Car Co.*, 840 N.E.2d 526, 528 (Mass. 2006), named plaintiffs were customers who rented cars from defendant rental company pursuant to a contract containing provisions related to loss damage waivers that violated a separate provision of Massachusetts law.  The named plaintiffs paid a rental fee to defendants in addition to a fee for the collision damage waiver ("CDW") protection, and alleged that the mere act of entering into a deceptive contract or purchase constituted a cognizable injury under the MCPA.  *Id.* at 528-29.

The courts in both cases rejected what the First Circuit referred to as the "purchase-as-injury" theory, *Shaulis*, 865 F.3d at 11-13, because plaintiffs failed to articulate a harm distinct from the alleged unfair or deceptive act itself.  *Id.*; *Hershenow*, 840 N.E.2d at 535. In particular, the First Circuit emphasized in *Shaulis* the absence of any allegation that the sweater was "worth less than the selling price, that it was manufactured with shoddy materials or inferior workmanship, that it is of an inferior design, or that it is otherwise defective".  865 F.3d at 12.  Plaintiff's subjective belief that she was getting a bargain was insufficient to state a claim of injury under the MCPA.  *Id.*  Similarly, the court emphasized in *Hershenow* that, because there was no allegation that the plaintiffs' cars actually had been damaged during the rental period, the defendant did not have any occasion to enforce the unlawful damage waiver provisions of the rental contracts.  840 N.E.2d at 528-29, 534-35.  Therefore, the court found that

18

"[t]he CDW made neither rental customer worse off during the rental period than he or she would have been had the CDW complied in full with the requirements of [Massachusetts law]", which meant they suffered no "injury" under the MCPA.  *Id.* at 535.

Applying those principles here, it is clear that Plaintiff Olson does not allege an injury sufficient to state a claim under the MCPA.  Plaintiff Olson alleges that he paid entry fees to participate in a contest whose winner was determined by the actual performance of individual baseball players selected by the entrants.  It is undisputed that the winners of the contests were in fact determined by the actual performance metrics achieved by the players selected.  Therefore, Plaintiff Olson got exactly what he paid for.  Any professed subjective beliefs about the methods through which those results would be achieved do not demonstrate an injury under the MCPA.  Just like the purchase price of the sweater in *Shaulis* and the CDW fee in *Hershenow*, the injury alleged here—the entrance fee paid to participate in a supposedly "corrupt and dishonest fantasy baseball competition"—is indistinguishable from the alleged deception.

To the extent Plaintiff Olson is relying on the existence of undisclosed *risks* of participating in DraftKings competitions in the sense that one's standing in the competition might be affected by performance metrics achieved through rule violations (*see* Am. Compl. ¶ 117), that is wholly speculative, and Plaintiff Olson critically fails to allege that any of the allegedly undisclosed risks actually manifested themselves.  For example, Plaintiff Olson does not allege that he (or any of the named Plaintiffs, for that matter) actually selected a lineup that included Red Sox batters or opposing pitchers and that his lineup performed worse than expected as a result.  Nor does Plaintiff Olson allege that he lost any DraftKings contest that he otherwise would have won if all performance metrics had been achieved in strict compliance with MLB rules.  Thus, the risk that Plaintiff Olson alleges here, that contest outcomes would somehow be

19

skewed by performance metrics achieved through violations of MLB rules, is precisely the sort

of speculative, inchoate harm that Massachusetts courts repeatedly have rejected as the basis of

an MCPA claim.  *See Rule*, 607 F.3d at 253 (finding no injury stated under the MCPA where

none of the undisclosed health risks associated with heartworm medication administered to the

named plaintiff's dog prior to suit actually resulted in any adverse health effect).

## CONCLUSION

       For the foregoing reasons, Defendant Boston Red Sox Baseball Club, L.P.

respectfully asks the Court to grant this motion and dismiss all claims asserted against it.[6]

Dated:  February 21, 2020

                       Respectfully submitted,

                       CRAVATH, SWAINE & MOORE LLP,

                 by

                             */s/* Lauren A. Moskowitz
                                  Katherine B. Forrest
                                  Michael T. Reynolds
                                  Lauren A. Moskowitz
                                  Members of the Firm

                     Worldwide Plaza
                       825 Eighth Avenue
                       New York, NY 10019
                       (212) 474-1000

                     *Attorneys for Defendant Boston Red Sox
                     Baseball Club, L.P.*

---

[6] To the extent that the complaint in *Clifford* v. *Major League Baseball, et al.*, 1:20-cv-01000 (JSR), remains operative despite Clifford joining the Amended Complaint in this case, it should be dismissed for the same reasons.