**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| KRISTOPHER R. OLSON, CHRISTOPHER LOPEZ, WARREN BARBER, CHRISTOPHER CLIFFORD, AND ERIK LIPTAK, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MAJOR LEAGUE BASEBALL; MLB ADVANCED MEDIA, LP; HOUSTON ASTROS, LLC; and BOSTON RED SOX BASEBALL CLUB, LP, <br><br> Defendants. | Case No. 1:20-cv-00632-JSR |

**HOUSTON ASTROS, LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

**VINSON & ELKINS L.L.P.**

Michael C. Holmes (*admitted pro hac vice*)
2001 Ross Avenue
Suite 3900
Dallas, TX 75201
Tel: 214-220-7814
Fax: 214-999-7814
mholmes@velaw.com

Clifford Thau
Hilary L. Preston
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Tel:  212-237-0000
Fax:  917-849-5342
cthau@velaw.com
hpreston@velaw.com

*Attorneys for Houston Astros, LLC*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................4

    I.    Plaintiffs Choose to Participate in DraftKings Fantasy Baseball and Do Not Allege that DraftKings Statistics are Inaccurate.................................................4

    II.   The MLB Investigation and Resulting Discipline ..................................5

ARGUMENT ................................................................................................5

    I.    Courts Repeatedly Hold that No Private Right of Action Exists for Disgruntled Fans...................................................................................................7

    II.   The Complaint Fails to State a Claim for Fraud against the Astros (Claim Five)............9

        A.   Prongs 1 and 2: Plaintiffs Do Not Allege Facts Supporting Any False Statement Or Duty To Disclose Any Omitted Facts. ...........................................10

        B.   Prong 3: Plaintiffs Have Not Alleged Facts that the Astros Intended to Deceive Any DraftKings User.................................................................11

        C.   Prong 4:  Plaintiffs Do Not Allege Facts That They Relied On Any False Statement Or Omission to Their Detriment...........................................12

    III.  The Complaint Fails to State A Claim Against the Astros for Negligence (Claim Seven). ...........................................................................................14

    IV.  The Complaint Fails to State a Claim Against the Astros under the Texas DTPA (Claim Six)...........................................................................................15

        A.   Daily Fantasy Sports Wagering Competitions Are Not Protected By the DTPA..................................................................................................15

        B.   Plaintiffs Have Not Alleged that Any Conduct by the Astros was a "Producing Cause" of Any Damages. .................................................17

    V.   The Complaint Fails to State a Claim Against the Astros for Unjust Enrichment (Claim Eight). ...........................................................................................18

CONCLUSION..............................................................................................20

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Alexander v. Turtur & Associates, Inc.*,
  146 S.W.3d 113 (Tex. 2004)...................................................................................... 17

*ASARCO LLC v. Goodwin*,
  756 F.3d 191 (2d Cir. 2014) ............................................................................ 5, 6, 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................................ 5, 6

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................................ 5, 6

*Bradford v. Vento*,
  48 S.W.3d 749 (Tex. 2001), *reh'g overruled* (Aug. 2, 2001)........................... 10, 11

*Brodsky v. Match.com, LLP*,
  No. 3-09-CV-2066-F-BD, 2010 WL 3895513 (N.D. Tex. Sept. 30, 2010)............. 12

*Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*,
  317 S.W.3d 361 (Tex. App.—Houston [1st Dist.] 2010), *reh'g overruled* (May 5, 2010)...... 17

*Casstevens v. Smith*,
  269 S.W.3d 222 (Tex. App.—Texarkana 2008, pet. denied) ................................. 18

*Castillo v. Tyson*,
  701 N.Y.S.2d 423 (1st Dep't 2000) ...................................................................... 7, 8

*Conradt v. NBC Universal, Inc.*,
  536 F. Supp. 2d 380 (S.D.N.Y. 2008) .................................................................... 19

*Davis v. OneWest Bank N.A.*,
  No. 02-14-00264-CV, 2015 WL 1623541 (Tex. App.—Fort Worth Apr. 9, 2015,
  pet. denied)............................................................................................................... 18

*Engalla v. Permanente Med. Grp., Inc.*,
  15 Cal. 4th 951 (1997) ............................................................................................... 9

*Fisk v. Letterman*,
  401 F. Supp. 2d 362 (S.D.N.Y. 2005) ...................................................................... 7

*Fowlkes v. Rodriguez*,
  584 F. Supp. 2d 561 (E.D.N.Y. 2008) ...................................................................... 7

*Gierut v. Morrison*,
  No. 03-17-00326-CV, 2018 WL 6715470 (Tex. App.—Austin Dec. 21, 2018, no pet.)......... 18

*Greater Houston Transp. Co. v. Phillips*,
  801 S.W.2d 523 (Tex. 1990)............................................................................... 14, 15

*Helena Chemical Co. v. Wilkins*,
  47 S.W.3d 486 (Tex. 2001)...................................................................................... 17

*Hu v. City of New York*,
  927 F.3d 81 (2d Cir. 2019) ........................................................................ 4

*Ibarra v. National Const. Rentals, Inc.*,
  199 S.W.3d 32 (Tex. App.—San Antonio 2006)..................................... 17

*Ibe v. Jones*,
  836 F.3d 516 (5th Cir. 2016) ................................................................... 11

*IKB Int'l S.A. v. Bank of Am. Corp.*,
  584 F. App'x 26 (2d Cir. 2014) ................................................................. 6

*In re Clorox Consumer Litig.*,
  No. 12-00280 SC, 2013 WL 3967334 (N.D. Cal. July 31, 2013) ........... 19

*In re Elevator Antitrust Litig.*,
  502 F.3d 47 (2d Cir. 2007) ........................................................................ 6

*In re General Motors LLC Ignition Switch Litig.*,
  257 F. Supp. 3d 372 (S.D.N.Y. 2017) .................................................... 15

*In re Guardianship of Fortenberry*,
  261 S.W.3d 904 (Tex. App.—Dallas 2008, no pet.)............................... 18

*In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*,
  942 F.3d 1160 (9th Cir. 2019) ............................................................ 8, 11

*In re Primera Energy, LLC*,
  579 B.R. 75 (Bankr. W.D. Tex. 2017), *aff'd sub nom. Alfaro v. Reiley*, No. 5:18-CV-
  0329-JKP, 2019 WL 4765385 (W.D. Tex. Sept. 27, 2019)..................... 19

*In re Thelen LLP*,
  736 F.3d 213 (2d Cir. 2013) ...................................................................... 6

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*,
  546 S.W.3d 648 (Tex. 2018), *reh'g denied* (June 15, 2018) .................... 9

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ................................................................... 9

*Kerruish v. Essex Holdings, Inc.*,
  777 F. App'x 285 (11th Cir. 2019)........................................................... 10

*Kinnard v. Circle K Stores Inc.*,
  966 S.W.2d 613 (Tex. App.—San Antonio 1998), *reh'g overruled*, (Mar. 4, 1998) ............... 16

*Kirwa v. Wells Fargo Bank*, N.A.,
  No. 4:18-CV-707-ALM-CAN, 2019 WL 2575058 (E.D. Tex. June 3, 2019), *report and
  recommendation adopted*, No. 4:18-CV-707, 2019 WL 2568611 (E.D. Tex. June 20,
  2019) ........................................................................................................ 12

*Leavitt v. Brockton Hosp., Inc.*,
  907 N.E.2d 213 (Mass. 2009) ................................................................. 14

*Licci ex rel. Licci v. Lebanese Can. Bank, SAL*,
  739 F.3d 45 (2d Cir. 2014) ...................................................................... 19

*Main Place Custom Homes, Inc. v. Honaker*,
   192 S.W.3d 604 (Tex. App.—Fort Worth 2006), *reh'g overruled* (Apr. 20, 2006) ................ 17

*Mancina v. Goodell*,
   No. 12-2512, 2013 WL 393041 (E.D. La. Jan. 30, 2013) ........................................ 8

*Mayer v. Belichick,*
   605 F.3d 223 (3d Cir. 2010), *cert denied*, 562 U.S. 1271 (2011) .................................... passim

*Melody Home Mfg. v. Barnes*,
   741 S.W.2d 349 (Tex. 1987) ........................................................................ 16

*Merrill v. Navegar, Inc.*,
   28 P.3d 116 (Cal. 2001) ............................................................................ 14

*Norman v. Certegy Check Servs., Inc.*,
   No. 3:12-CV-836-N (BF), 2013 WL 3878590 (N.D. Tex. July 29, 2013) .......................... 16

*Omni USA, Inc. v. Parker–Hannifin Corp.*,
   798 F. Supp. 2d 831 (S.D. Tex. 2011) .............................................................. 15

*Pagayon v. Exxon Mobil Corp.*,
   536 S.W.3d 499 (Tex. 2017) ........................................................................ 14

*Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*,
   896 S.W.2d 156 (Tex. 1995) ........................................................................ 17

*R.M. Dudley Const. Co., Inc. v. Dawson*,
   258 S.W.3d 694 (Tex. App.—Waco 2008, pet. denied) ............................................ 18

*Rabin v. Dow Jones & Co., Inc.*,
   No. 14-CV-4498, 2014 WL 5017841 (S.D.N.Y. Sept. 23, 2014) .................................. 14

*Rapoport v. Asia Electronics Holding Co.*,
   88 F. Supp. 2d 179 (S.D.N.Y. 2000) ................................................................ 7

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
   786 F. Supp. 2d 1202 (S.D. Tex. 2009) ............................................................ 12

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ........................................................................ 6

*Russell v. Cooley Dickinson Hosp., Inc.*,
   772 N.E.2d 1054 (Mass. 2002) ...................................................................... 9

*Steele v. Goddard*,
   No. 10–12–00111–CV, 2013 WL 3013671 (Tex. Ct. App. June 13, 2013) ...................... 18

*Taylor v. Am. Chemistry Council*,
   576 F.3d 16 (1st Cir. 2009) .......................................................................... 9

*Vigo v. Reed*,
   No. 11-Civ.-2044-G, 2013 WL 786925 (N.D. Tex. Mar. 4, 2013) .............................. 19

*Virgilio v. Ryland Grp., Inc.*,
   680 F.3d 1329 (11th Cir. 2012) .................................................................... 14

*W. Invs., Inc. v. Urena*,
   162 S.W.3d 547 (Tex. 2005) ............................................................................ 14, 17

*Williams v. Affinion Grp., LLC*,
   889 F.3d 116 (2d Cir. 2018) ................................................................................... 6

**Statutes**

Fed. R. Civ. P. 9(b) ........................................................................................... 2, 6, 9, 15

Fed. R. Civ. P. 12(b)(6) ............................................................................................... 1, 6

TEX. BUS. & COM. CODE ANN. §§ 17.45(1)–(2) ........................................................ 16

TEX. BUS. & COM. CODE ANN. § 17.45(4) ................................................................. 16

TEX. BUS. & COM. CODE ANN. § 17.50(a) ................................................................. 15

TEX. BUS. & COM. CODE ANN. § 17.50(a)(1) ............................................................ 15

Defendant Houston Astros, LLC (the "Astros") submits this memorandum of law in support of its motion to dismiss the Amended Complaint, *see* Dkt. 20 (the "Complaint" or "Compl.") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In this action, plaintiffs Kristopher R. Olson, Christopher Lopez, Warren Barber, Christopher Clifford, and Erik Liptak (collectively "Plaintiffs") bring claims against the Astros, Major League Baseball ("MLB"), MLB Advanced Media, LP ("MLBAM"), and Boston Red Sox Baseball Club, LP (the "Red Sox," and together with the Astros, MLB, and MLBAM, "Defendants"), on behalf of a purported class (the "Class") of participants in the DraftKings, Inc. ("DraftKings") fantasy baseball wagering platform. Plaintiffs do not allege that they had a contractual or fiduciary relationship with any Defendant, that any representative of any Defendant made a representation or statement to them, or even that they attended or viewed an Astros or Red Sox game. Rather, Plaintiffs had a contractual relationship solely with DraftKings, and the transactions that form the basis of their Complaint — consisting of wagers tied to Plaintiffs' selection of individual MLB players — were governed by their contract with DraftKings. In short, subject to the terms of that contract, DraftKings participants paid DraftKings to participate in fantasy contests, and DraftKings made payments to the winners of those contests.

However, seeking to sidestep the DraftKings Terms of Use (which contain strict limitations on liability, a mandatory arbitration provision, and provisions giving DraftKings sole discretion to restate the results of any contest), the Complaint omits any details regarding that contract and instead attempts to bring claims against the Defendants. Through a chain of conclusory suppositions, Plaintiffs contend that they were injured because Defendants violated MLB rules through electronic sign stealing, which in turn allegedly hypothetically altered baseball player statistics, and, therefore, they claim, the outcome of DraftKings fantasy baseball competitions on

which they placed bets.  With respect to the Astros in particular, Plaintiffs claim that this tenuous chain of assertions amounted to fraud and negligence, violated the Texas Deceptive Trade Practices Act ("DTPA"), and unjustly enriched the Astros.  Each of these claims fails as a matter of law.

Courts across the country have held that attendees or viewers of sporting events have no legal claim against sports teams for undisclosed injuries, rules violations, or similar acts, and accordingly, have dismissed such claims as a matter of law, including fraud and consumer protection claims like those asserted by Plaintiffs.  For example, in *Mayer v. Belichick*, the Third Circuit affirmed the dismissal of claims against the New England Patriots for alleged play-call stealing, holding that "it is not the role of judges and juries to be second-guessing the decision taken by a professional sports league purportedly enforcing its own rules."  605 F.3d 223, 237 (3d Cir. 2010), *cert denied*, 562 U.S. 1271 (2011)).  Plaintiffs' claims are no exception to this general rule – and in fact are even more attenuated than the claims of disgruntled sports fans that have been repeatedly rejected by the courts.  *See* Argument, Section I, *infra*.

Perhaps not surprisingly in light of this general rule, Plaintiffs' contentions fail to plausibly allege the basic elements of their asserted claims, let alone plead with the requisite particularity (required by Rule 9(b) as their claims sound in fraud).   Plaintiffs' fraud claim must be dismissed because Plaintiffs have failed to allege that the Astros made any misrepresentation to DraftKings users, or that the Astros had any duty to Plaintiffs or the Class to disclose any alleged sign-stealing.  Plaintiffs also fail to plausibly allege that the Astros acted with an intent to deceive DraftKings users or that Plaintiffs reasonably relied on any conduct by the Astros to their detriment.  Moreover, Plaintiffs' own pleaded facts refute any allegations that the Astros caused them injury.  Plaintiffs allege that the Astros' MLB rule violations resulted in "distorted" player statistics, but do not

allege that any player statistics, or the DraftKings salary algorithm, were inaccurate.  Nor do they allege that player statistics or game results have ever been restated or modified in any way. Plaintiffs' complaint is essentially that they did not know the true reason behind certain Astros player statistics (*i.e.* the alleged rule violations), but that information was irrelevant to Plaintiffs' ultimate goal: scoring the most fantasy points and winning the cash prize.  *See* Argument, Section II, *infra*.

Plaintiffs' remaining claims fail for many of the same reasons.  Regarding the negligence claim, the lack of any duty running from the Astros to DraftKings users is fatal.  *See* Argument, Section III, *supra*.  Regarding Plaintiffs' DTPA claim, the Complaint suffers from two fatal flaws: the failure to plausibly allege reliance on any action by the Astros and the reality that wagering competitions such as DraftKings fantasy baseball contests are not protected under the DTPA statute.  *See* Argument, Section IV, *infra*.  Last, Plaintiffs' unjust enrichment claim must be dismissed because unjust enrichment is not an independent cause of action under Texas or California law, and Plaintiffs do not plausibly allege the elements required by those states that do recognize an unjust enrichment claim.  *See* Argument, Section V, *infra*.

Ultimately, Plaintiffs are attempting to vindicate an alleged right to make their wagering decisions based on baseball player statistics free from purported rule violations.  No such right exists, and because it would have untold consequences if it did, Courts have repeatedly rejected claims to the contrary.  Plaintiffs' Complaint should likewise be rejected.  As articulated by the Third Circuit in *Mayer*, "ticket-holders and other fans [and here users of the DraftKings platform] may have legitimate concerns. . . However, the one thing they *cannot* do is bring legal action in a court of law."  605 F.3d at 237.

The Astros incorporate by reference the arguments made in the Memoranda of Law in Support of the Motions to Dismiss filed by MLB, MLBAM and the Red Sox (the "MLB Defendants' Brief" and the "Red Sox Brief," respectively) as if fully stated herein.  The Astros will reference particular sections of the MLB Defendants' Brief and the Red Sox Brief throughout the discussion below in an effort to avoid duplication.

## BACKGROUND

The following facts are taken from the Complaint and are assumed to be true only for purposes of this motion.  *See Hu v. City of New York*, 927 F.3d 81, 88 (2d Cir. 2019).

### I.   Plaintiffs Choose to Participate in DraftKings Fantasy Baseball and Do Not Allege that DraftKings Statistics are Inaccurate.

DraftKings is a Delaware corporation that operates daily fantasy sports ("DFS") contests, including fantasy baseball contests.  *See* Compl. ¶ 30.  Plaintiffs seek to represent a class of individuals "who participated in DraftKings' MLB DFS contests that took place from April 2, 2017 through October 30, 2019 and paid an entry fee for, and entered a lineup into, a DraftKings MLB DFS contest."  *Id.* at ¶ 141–146.  Fantasy baseball is a statistics-based wagering game; contestants assemble "fantasy teams" based upon real-life MLB players to compete against the lineups selected by other contestants.  *Id.* at ¶ 27.  The performance of a "fantasy team" is measured by the performance of the players selected, as measured by certain statistics.  *Id.* at ¶ 28.

Contestants select their DFS lineups pursuant to "salary cap" drafts, whereby each contestant is allotted a certain amount of imaginary money to spend on players for their team.  *Id.* at ¶ 31.  Each player is assigned a salary value.  *Id.*  The better the player is expected to perform—based upon past statistical performance—the higher the salary.  *Id.* DFS contests begin once the first MLB game on which the contest is based begins, and each contestant's pecuniary gain or loss is "wholly dependent on player performance."  *Id.* at ¶ 32.  Critically, Plaintiffs do not

– and cannot – allege that the statistics used in DraftKings MLB DFS contests failed to accurately reflect historical player performance.

## II.     The MLB Investigation and Resulting Discipline

In late 2019, MLB launched an investigation into allegations that the Astros violated MLB rules prohibiting teams from using electronic devices to monitor and decipher another team's pitcher and catcher's coded signs—*i.e.*, "sign stealing." *Id.* ¶¶ 87–88. The Astros fully cooperated.[1] Based on MLB's findings, the Astros were fined $5 million, the largest available fine under the Major League Baseball Constitution. *Id.* at 8. In addition, MLB suspended the Astros General Manager, Jeff Luhnow and Field Manager, A.J. Hinch for the 2020 season, and the team was required to forfeit its regular first and second round draft picks for the 2020 and 2021 seasons. *Id.* at 8–9. These fines and suspensions amounted to the conclusion of MLB's investigation into the Astros' conduct, and discipline for its own internal rules violations. *See id.* at 1, 8.

## ARGUMENT

To survive a motion to dismiss, Plaintiffs must allege well-pleaded facts with sufficient detail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007). Conclusory allegations are not entitled to the presumption of truth on a motion to dismiss and a plaintiff "armed with nothing more than conclusions" or "threadbare recitals of the elements of a cause of action" fails to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–81 (2009). Claims that are merely possible or conceivable are subject to dismissal under Rule

---

[1] *See* Robert D. Manfred, Jr., *Statement of the Commissioner*, OFFICE OF THE COMMISSIONER OF BASEBALL (Jan. 13, 2020), https://img.mlbstatic.com/mlb-images/image/upload/mlb/cglrhmlrwwbkacty27l7.pdf (*last visited* Feb. 21, 2020) at 1. The Commissioner's Statement is cited throughout the Complaint, and incorporated by reference therein. Therefore, it may be considered in deciding this Motion to Dismiss. *ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).

12(b)(6).  *Id.* at 679.  To avoid dismissal, Plaintiffs must plead facts sufficient to "nudge [their] claims across the line from conceivable to plausible."  *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).  The motion to dismiss standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.

Where, as here, the Complaint alleges fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that Plaintiffs "state with particularity the circumstances constituting fraud." Specifically, Plaintiffs are required to identify "(1) the specific statements that are false or fraudulent, (2) identify the speaker, (3) state when and where the statements were made, and (4) explain why the statements were fraudulent."  *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018) (citations omitted) (numbering added).  Furthermore, Plaintiffs must plead facts that  "give[] rise to a strong inference of fraudulent intent."  *IKB Int'l S.A. v. Bank of Am. Corp.*, 584 F. App'x 26, 27 (2d Cir. 2014).  The particularity requirements of Rule 9(b) apply to claims not formally denominated as fraud that nonetheless "sound" in fraud.  *See Rombach v. Chang*, 355 F.3d 164, 167 (2d Cir. 2004).

In deciding a motion to dismiss, the Court may consider the allegations in the Complaint as well as "any written instrument attached to the complaint as an exhibit, any statements or documents incorporated in it by reference, and any document upon which the complaint heavily relies."  *ASARCO*, 756 F.3d at 198 (quoting *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013)). When the allegations in the Complaint are contradicted by documents attached thereto, documents incorporated by reference therein, or matters of public record, such allegations are not entitled to the presumption of truth on a motion to dismiss.  *See Fowlkes v. Rodriguez*, 584 F. Supp. 2d 561,

574 (E.D.N.Y. 2008); *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005); *Rapoport v. Asia Electronics Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000).

## I.     Courts Repeatedly Hold that No Private Right of Action Exists for Disgruntled Fans.

Plaintiffs' central theory in this case is that, as a result of the Astros' alleged sign-stealing, they and the putative Class were denied an undefined right to participate in fantasy baseball wagering competitions free of rules violations.  Compl. ¶¶ 9–10, 332, 340, 344, 430, 528.  It is well established, however, that attendees or viewers at sporting events have no express or implied right to an event free of penalties, undisclosed injuries, rules violations, cheating, or similar conduct, and claims asserting such a right have been repeatedly dismissed.  Accordingly, as specifically relevant to Plaintiffs' claims in this case, there is no legal claim for a violation of a sports league's internal rules.  In *Mayer v. Belichick*,  the Third Circuit addressed a strikingly similar scenario involving alleged sign stealing; there, the court affirmed the dismissal of a putative class action brought by a season ticket holder against the New England Patriots in response to the "Spygate" affair, in which the Patriots surreptitiously videotaped their opponents' sideline signals to use that information to their strategic advantage later in the season.  605 F.3d at 231.  The Court in *Mayer* dismissed plaintiff's fraud, consumer protection, and other claims, recognizing that to hold otherwise "could lead to other disappointed fans filing lawsuits because of 'a blown call' that apparently caused their team to lose or any number of allegedly improper acts committed by teams, coaches, players, referees and umpires, and others." *Id.* at 237.

Similarly, in *Castillo v. Tyson*, the New York Appellate Division, First Department affirmed the dismissal of fraud, unjust enrichment, and negligent representation claims brought by viewers of a boxing match in which a defendant was disqualified for biting his opponent's ear. 701 N.Y.S.2d 423, 425 (1st Dep't 2000).  The First Department rejected plaintiffs' allegations that they were "entitled to view a 'legitimate heavyweight title fight' fought 'in accordance with the

applicable rules and regulations,'" holding that "[t]he rules of the governing commission provide for disqualification," and regardless of statements "promising or implying a 'legitimate fight'" disqualification "is a possibility that a fight fan can reasonably expect." *Id.* at 424.

Likewise, in *In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.*, the Ninth Circuit affirmed the dismissal of fraud claims brought by consumers against boxers and a television network, alleging that the defendants had fraudulently concealed that one of the boxers was injured before the fight in order to make the fight seem more appealing to fans. 942 F.3d 1160 (9th Cir. 2019). In dismissing the claims, the Ninth Circuit noted that plaintiffs' theory of liability had "serious workability problems" because it would require an affirmative disclosure anytime an athlete felt injured. *Id.* at 1171*; see also Mancina v. Goodell*, No. 12-2512, 2013 WL 393041, at *1-3 (E.D. La. Jan. 30, 2013) (dismissing season ticketholder's claims under the Louisiana's Unfair Trade Practices and Consumer Protection Law against the NFL and its commissioner after the NFL sanctioned the Saints for allegedly paying its players "bounties" to injure opposing team players).

If there is any implied understanding of fans, it is that rule infractions will occur during the games, as penalties or fouls are a well-known aspect of sports. *Mayer,* 605 F.3d at 236*.* As the Third Circuit held in dismissing claims filed in response to the "Spygate" scandal:

> It appears uncontested that players often commit intentional rule infractions in order to obtain an advantage over the course of the game. For instance, a football player may purposefully commit pass interference or a "delay of game." Such infractions, if not called by the referees, may even change the outcome of the game itself. There are also rules governing the off-field conduct of the football team, such as salary 'caps' and the prohibition against 'tampering' with the employer-employee relationships between another team and its players and coaches.

*Id.*

Here, the claims of injury by Plaintiffs and the purported Class are even more attenuated than those of disgruntled fans that have been rejected by Courts across the country (including two Circuit Courts of Appeal) because Plaintiffs allege than they and the putative Class solely used third party fantasy baseball wagering platform DraftKings to place bets, and used baseball statistics in making those bets.   As articulated by the Third Circuit in *Mayer*, "ticket-holders and other fans [and here users of the DraftKings platform] may have legitimate concerns with the manner in which they are treated . . . However, the one thing they *cannot* do is bring legal action in a court of law." *Id.* at 237.

## II.   The Complaint Fails to State a Claim for Fraud against the Astros (Claim Five).

Plaintiffs' fraud claim is based on the theory that the Astros failed to disclose the alleged sign stealing conduct to DraftKings users.  *See, e.g.* Compl., ¶¶ 373, 381.   Plaintiffs allege they would not have participated in MLB DFS contests had they known about the Astros' alleged sign stealing.  *Id.* ¶ 395.   These allegations fall woefully short of the requirements to plead a fraud claim or to satisfy the heightened pleading requirements of Rule 9(b).   To allege a fraud claim, Plaintiffs must plead: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018), *reh'g denied* (June 15, 2018) (internal quotations omitted); *see also Taylor v. Am. Chemistry Council*, 576 F.3d 16, 31 (1st Cir. 2009) (quoting *Russell v. Cooley Dickinson Hosp., Inc.*, 772 N.E.2d 1054, 1066 (Mass. 2002)); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (citing *Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 974 (1997)); *Kerruish v. Essex Holdings,*

*Inc.*, 777 F. App'x 285, 292 (11th Cir. 2019) (applying Florida law).[2]  Plaintiffs fail on all four prongs.

> **A.     Prongs 1 and 2: Plaintiffs Do Not Allege Facts Supporting Any False Statement Or Duty To Disclose Any Omitted Facts.**

First, Plaintiffs do not allege that the Astros made any materially false statement to any DraftKings user, or that the Astros made any materially false statement regarding DraftKings or the reliability of baseball statistics more generally.  Plaintiffs wrongly characterize as false statements certain commentary by Astros' players and staff regarding the team's hitting ability and competitive advantage, as well as informal commentary in interviews and tweets about sign-stealing rumors.  Compl. ¶ 96.  Plaintiffs even go so far as to characterize the Astros' theme of "Earn History," as a false statement.  *Id.* ¶ 98.  But Plaintiffs do not plausibly allege or explain why any of these statements are fraudulent.  Even accepting the Complaint's allegations as true, the alleged sign-stealing does not in itself render false *any* statement about the team's strengths and successes.  Moreover, these offhand and general statements are not actionable statements of present fact that can give rise to a fraud claim.  *See* Red Sox Brief at 3–5.

In the absence of any false statement, Plaintiffs attempt to proceed on a material omission theory, alleging that the Astros failed to disclose the alleged sign stealing to DraftKings users.  *See, e.g.* Compl. ¶ 373–377.  But "failure to disclose information does not constitute fraud unless there is a duty to disclose the information."  *Bradford v. Vento*, 48 S.W.3d 749, 755 (Tex. 2001), *reh'g overruled* (Aug. 2, 2001).  Therefore, "silence may be equivalent to a false representation only

---

[2] The Astros cite primarily to Texas law throughout this Memorandum of Law and do not concede that any other State's law applies to Plaintiffs' claims.  However, as demonstrated by the representative case law cited herein, as well as the MLB Defendants' Brief and the Red Sox Brief, regardless of which State's law applies, Plaintiffs' claims must be dismissed.  *See* MLB Defendants' Brief at 8-9, 16-23; Red Sox Brief at 3-5, 9, 12–13, 15-16.

when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." *Id.* Here, Plaintiffs have failed to plausibly allege the existence of any duty on the part of the Astros to disclose the alleged rule violations to Plaintiffs or the Class. Plaintiffs make the conclusory allegation that the Astros had a duty to "disclose its knowledge of its impermissible electronic sign stealing and the resulting distorted player performance statistics," Compl. ¶ 380, but conclusory allegations of duty are insufficient to survive a motion to dismiss. *See* Red Sox Brief at 5; MLB Defendants' Brief at 17–18.

Moreover, Plaintiffs' asserted duty does not exist under applicable law. *See, e.g. Ibe v. Jones*, 836 F.3d 516, 527 (5th Cir. 2016) (quoting *Bradford v. Vento*, 48 S.W.3d 749, 755–56 (Tex. 2001)) ("Texas has 'never adopted' [a] rule recognizing a general duty to disclose facts in a commercial setting."). As discussed in Section I above, numerous courts have held that there is no duty on the part of sports leagues or sports teams to disclose rule violations, player injuries or similar conduct. In *In re Pacquiao-Mayweather*, the Ninth Circuit held that to recognize a duty to disclose in these scenarios could significantly expand liability to disappointed fans such that disclosure could be required any time an athlete felt injured. 942 F.3d at 1171. Similarly, in *Mayer*, the Court noted that imposing such an obligation could "lead to other disappointed fans filing lawsuits because of . . . any number of allegedly improper acts committed by teams, coaches, players, referees and umpires, and others." 605 F.3d at 237 (dismissing fraud claims based on failure to disclose sign stealing in connection with the "Spygate" affair).

### B. Prong 3: Plaintiffs Have Not Alleged Facts that the Astros Intended to Deceive Any DraftKings User.

Plaintiffs also fail to allege facts giving rise to a strong inference that the Astros intended for DraftKings users to rely upon any alleged false statement or material omission. Plaintiffs allege that "Defendant Astros intended . . . to deceive members of the public – including Plaintiffs and

the Classes – into believing that defendant Astros' team and player success was the result of legitimate performance ability and use of modern analytics," (Compl. ¶ 382), but such conclusory allegations do not give rise to a strong inference of fraudulent intent, and are insufficient to survive a motion to dismiss. *Kirwa v. Wells Fargo Bank*, N.A., No. 4:18-CV-707-ALM-CAN, 2019 WL 2575058, at *7 (E.D. Tex. June 3, 2019) (dismissing common law fraud claim when complaint did not "make anything more than conclusory allegations as to Defendant's intent that Plaintiff act upon any such false misrepresentations."), *report and recommendation adopted*, No. 4:18-CV-707, 2019 WL 2568611 (E.D. Tex. June 20, 2019). Absent any factual allegation that the Astros intended for Plaintiffs to receive and rely on any alleged representations regarding sign stealing or player performance statistics, Plaintiffs' fraud claim must be dismissed. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1202, 1210 (S.D. Tex. 2009) (dismissing Plaintiff's fraud claim when plaintiff did not "sufficiently allege that Defendants knew that Plaintiff would rely on the information" or that such reliance "is especially likely and justified . . . ."). *See* Red Sox Brief at 8–9.

### C.     Prong 4: Plaintiffs Do Not Allege Facts That They Relied On Any False Statement Or Omission to Their Detriment.

Moreover, Plaintiffs do not plausibly allege, much less plead with particularity, facts showing that they relied on any action by the Astros to their detriment. Plaintiffs make the conclusory allegation that they "would not have entered into DraftKings' MLB DFS contests during the Class Period had [they] known that the honesty of the player performance statistics on which [their] wagers were based and the results of [their] wagers were determined was compromised. . . .," (*see, e.g.* Compl. ¶¶ 124, 128, 132, 136, 140), but do not allege a single instance in which they based a DFS wager on allegedly compromised player statistics, or otherwise explain how they made their wagering decisions. *Brodsky v. Match.com, LLP*, No. 3-09-CV-2066-

F-BD, 2010 WL 3895513, at *2 (N.D. Tex. Sept. 30, 2010) (dismissing claims under Texas law for fraud, fraudulent inducement, negligent misrepresentation, and DTPA violations when plaintiffs made mere "conclusory allegations of reliance" and "allege[d] nothing to suggest that they actually relied on any false representation in deciding to become fee-paying subscribers of defendants' online dating services"); *see also* MLB Defendants' Brief at 23; Red Sox Brief at 9– 12.

Moreover, Plaintiffs have not – and cannot – plausibly allege that any baseball player statistics or the DraftKings salary algorithm were inaccurate or that alleged sign stealing caused them any actual damage. The Complaint asserts that the Astros' sign stealing produced "distorted" player statistics, Compl. ¶ 10, but also acknowledges that DraftKings' algorithms baked those statistics into player salaries, *see, e.g. id.* at ¶ 31 ("The better a real-life MLB player *has or is expected* to perform, the higher his 'salary.'") (emphasis added). The Complaint also states that "past statistical performance of the real-life MLB players available to be drafted by contestants is [] a material consideration" in drafting. *Id.* at ¶ 31. Accordingly, following the logic of the Complaint, to the extent that pitchers "performed poorly" against the Astros during home games due to alleged sign stealing, or certain player statistics improved during home games (Compl. ¶ 117), this performance was recognized by DraftKings users and incorporated into the DraftKings salary algorithm. Although DraftKings users might not have been able to discern the precise reasons behind Astros player performance statistics, that question was irrelevant to their ultimate goal: scoring the most fantasy points and winning the cash prize. *See also* MLB Defendants' Brief at 10.[3]

---

[3] In any event, Plaintiff's allegations that DraftKings users were disadvantaged by the Astros "not performing as well as expected in away games . . . as a result of not having access to the Trash Can Scheme or Replay Room Scheme," do not reflect publicly available information concerning

### III.    The Complaint Fails to State A Claim Against the Astros for Negligence (Claim Seven).

Plaintiffs' negligence claim against the Astros likewise fails and must be dismissed.  To state a claim for negligence, Plaintiffs must plausibly allege "the existence of a duty, a breach of that duty, and damages proximately caused by that breach." *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005); *see also Leavitt v. Brockton Hosp., Inc.*, 907 N.E.2d 213, 215 (Mass. 2009); *Merrill v. Navegar, Inc.*, 28 P.3d 116, 123 (Cal. 2001); *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012) (applying Florida law).  Accordingly, "[t]he threshold inquiry in a negligence case is duty." *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990); *see Pagayon v. Exxon Mobil Corp.*, 536 S.W.3d 499, 503–04 (Tex. 2017).  To satisfy the duty requirement, "the plaintiff must establish both the existence of and the violation of a duty *owed to the plaintiff by the defendant*." *Id.* (emphasis added.).

As discussed in Section II(A) above, Plaintiffs' conclusory allegations that the Astros owed them a duty are insufficient to state a claim.  *See Rabin v. Dow Jones & Co., Inc.*, No. 14-CV-4498, 2014 WL 5017841, at *2 (S.D.N.Y. Sept. 23, 2014) (dismissing negligence claim when plaintiff failed to "plead particular facts supporting [the] conclusory allegation" that defendant owed a duty).  The duty that Plaintiffs are attempting to impose upon the Astros is essentially a duty to ensure that not only MLB games, but DraftKings MLB DFS wagering competitions, are

---

the Astros player statistics.   In 2017, for example, the Astros scored 395 runs at home (4.88 runs per game), while scoring 501 runs on the road (6.19 runs per game).  In addition, the Astros hit 115 home runs while at home, yet were able to hit 123 home runs on the road.  Furthermore, the Astros' batting average improved from .279 at home to .284 on the road.  Finally, their on-base slugging percentage improved from .812 at home to .834 on the road. *Houston Astros Batting Splits – 2017*, ESPN, https://www.espn.com/mlb/team/splits/_/name/hou/season/2017 (*last visited* Feb. 21, 2020).  Because the Astros player performance statistics form the basis of Plaintiffs' allegations, these publicly available statistics are incorporated by reference into the Complaint and may be considered on a motion to dismiss.  *ASARCO*, 756 F.3d at 198.

fair. *See* Compl. at ¶ 447. However, this is not a duty that any court has imposed on a professional sporting team. Section I, *supra*; MLB Defendants' Brief at 16–19; *see also Phillips*, 801 S.W.2d at 525 (stating that absent a "special relationship" there is "no duty to control the conduct of third persons").

IV.    **The Complaint Fails to State a Claim Against the Astros under the Texas DTPA (Claim Six).**

In the Complaint, Plaintiffs state that they "intend to assert a claim under the Texas Deceptive Trade Practices Act" (Compl. ¶ 398), but proceed to assert that the Astros "engaged in misleading, false, deceptive and/or unfair acts that violated the DTPA." To the extent Plaintiffs have in fact decided to assert a claim under the DTPA, it should be dismissed. Under the DTPA, a consumer may maintain an action where the "use or employment by any person of a false, misleading, or deceptive act or practice" constitutes a "producing cause" of economic damages. TEX. BUS. & COM. CODE ANN. § 17.50(a). To state a claim under the DTPA, a consumer must allege facts showing that he or she relied on the "false, misleading, or deceptive act or practice" to his or her detriment. TEX. BUS. & COM. CODE ANN. § 17.50(a)(1). Furthermore where, as here, a DTPA claim sounds in fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b). *In re General Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 449 (S.D.N.Y. 2017) (citing *Omni USA, Inc. v. Parker–Hannifin Corp.*, 798 F. Supp. 2d 831, 850–51 (S.D. Tex. 2011)).

Plaintiffs' DTPA claim fails for two independent reasons, demonstrated below: (1) participation in daily fantasy sports is not an activity protected by the DTPA; and (2) Plaintiffs fail to allege facts that any conduct by the Astros is a "producing cause" of any alleged damages.

A.    **Daily Fantasy Sports Wagering Competitions Are Not Protected By the DTPA.**

Plaintiffs' DTPA claim must be dismissed because they (and the putative Class) are not "consumers" within the meaning of the DTPA. To qualify as a consumer under the DTPA,

Plaintiffs must meet two requirements.  First, they must have "sought or acquired, by purchase or lease, goods or services."  TEX. BUS. & COM. CODE ANN. § 17.45(4).  Second, the acquired goods or services must form the basis of the complaint.  *Melody Home Mfg. v. Barnes*, 741 S.W.2d 349, 352 (Tex. 1987).  The DTPA defines "goods" as "tangible chattels or real property purchased or leased for use" and "services" as "work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods."  TEX. BUS. & COM. CODE ANN. §§ 17.45(1)–(2).

Texas courts have found gambling or wagering does not qualify as provision of a "good or service" for purposes of the DTPA.  *See Kinnard v. Circle K Stores Inc.*, 966 S.W.2d 613, 617–18 (Tex. App.—San Antonio 1998), *reh'g overruled*, (Mar. 4, 1998); *see also Norman v. Certegy Check Servs., Inc.*, No. 3:12-CV-836-N (BF), 2013 WL 3878590, at *3 (N.D. Tex. July 29, 2013) (check given to casino was not for goods and services under DTPA).  For example, in *Kinnard*, the Court held that a lottery ticket was neither a good nor a service because plaintiff's central objective in purchasing the ticket was merely a "chance to participate in the Texas Lotto drawing for that date."  966 S.W.2d at 617–18.  The *Kinnard* Court concluded that plaintiff was not a "consumer" protected by the DTPA because "when a transaction's central objective is the acquisition of an intangible, Texas law does not grant consumer status."  *Id.*

Here, Plaintiffs allege that they and the putative Class are consumers within the meaning of the DTPA because they paid for "fantasy baseball services."  Compl. ¶ 428.  Plaintiffs describe themselves and the Class as "daily fantasy sports participants who ***wager on contests*** . . . ."  *Id.*, ¶ 402 (emphasis added).  Thus, as in *Kinnard*, Plaintiffs' object or central objective of the transaction was the acquisition of an intangible, *i.e.* the chance to participate in the fantasy baseball

wagering competitions for those specific dates.  Accordingly, Plaintiffs did not seek or purchase any "good or service" and do not qualify as consumers protected by the DTPA.

> **B.    Plaintiffs Have Not Alleged that Any Conduct by the Astros was a "Producing Cause" of Any Damages.**

To state a claim under the DTPA, Plaintiffs must also plead facts showing that the Astros' actions were the "producing cause"—meaning a cause in fact—of actual damages.  *Alexander v. Turtur & Associates, Inc.*, 146 S.W.3d 113 (Tex. 2004); *Helena Chemical Co. v. Wilkins*, 47 S.W.3d 486, 502 (Tex. 2001); *Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156 (Tex. 1995); *Main Place Custom Homes, Inc. v. Honaker*, 192 S.W.3d 604 (Tex. App.—Fort Worth 2006), *reh'g overruled* (Apr. 20, 2006).  An act or omission is a cause in fact of an injury, so as to be a "producing cause" within the meaning of the DTPA, if without it, the harm would not have occurred.  *Ibarra v. National Const. Rentals, Inc.*, 199 S.W.3d 32 (Tex. App.—San Antonio 2006) (citing *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 550–51 (Tex. 2005).  Conversely, an act or omission is not a cause in fact if it does no more than furnish a condition that makes the injury possible.  *Id*. at 36.  Accordingly, to meet the DTPA's "producing cause" requirement, courts have held that a consumer must show that (1) he or she has *relied to his or her detriment* on the defendant's false, misleading, or deceptive conduct, and (2) such reliance is a cause in fact of actual damages.  *Brown & Brown of Texas, Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 387 (Tex. App.—Houston [1st Dist.] 2010), *reh'g overruled* (May 5, 2010).

Here,  as discussed in Section II above, Plaintiffs do not plausibly allege, much less plead with particularity, that they relied on any action by the Astros to their detriment.  Plaintiffs do not allege a single instance in which they based a DFS wager on allegedly compromised player statistics, or otherwise explain how they made their wagering decisions.  Even if Plaintiffs had made such allegations, Plaintiffs did not—and cannot—plausibly allege that any alleged sign

stealing was the "cause in fact" of any altered player statistics or any actual damage. *See* Section III, *supra*.[4]

## V.     The Complaint Fails to State a Claim Against the Astros for Unjust Enrichment (Claim Eight).

Plaintiffs' claim against the Astros for unjust enrichment must also be dismissed for the simple reason that unjust enrichment is not an independent cause of action under Texas law. *See Gierut v. Morrison*, No. 03-17-00326-CV, 2018 WL 6715470, at *6 (Tex. App.—Austin Dec. 21, 2018, no pet.) ("Unjust enrichment is a measure of damages, not a cause of action."); *Davis v. OneWest Bank N.A.*, No. 02-14-00264-CV, 2015 WL 1623541, at *1 (Tex. App.—Fort Worth Apr. 9, 2015, pet. denied) ("Unjust enrichment, itself, is not an independent cause of action but rather 'characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay.'"); *R.M. Dudley Const. Co., Inc. v. Dawson*, 258 S.W.3d 694, 703 (Tex. App.—Waco 2008, pet. denied) (same); *In re Guardianship of Fortenberry*, 261 S.W.3d 904, 915 (Tex. App.—Dallas 2008, no pet.) (same) *Casstevens v. Smith*, 269 S.W.3d 222, 229 (Tex. App.—Texarkana 2008, pet. denied) (same).

Although the Texas Supreme Court has not decided the issue, federal courts will look to "the language of the state intermediate appellate courts to be helpful indicators of how the state's

---

[4] Plaintiffs' DTPA claim fails for the additional reason that they have not adequately alleged the Astros employed any "false, misleading, deceptive and/or unfair" practice within the meaning of the statute. The basis for Plaintiffs' DTPA claim is that the Astros failed to disclose the purported sign stealing scheme – allegedly leading to tainted player statistics. *See* Compl. ¶ 407–09. But, as discussed above in Section III, Plaintiffs have failed to plausibly allege – much less plead with particularity – the existence of any duty on the part of the Astros to disclose such information. Accordingly, Plaintiffs' DTPA claim fails as a matter of law. *See Steele v. Goddard*, No. 10–12–00111–CV, 2013 WL 3013671, at *7 (Tex. Ct. App. June 13, 2013) (Under Texas' DTPA, omission-based claims require "duty to disclose").

highest court would rule . . . [and] will look to their decisions unless convinced by other persuasive data that the highest court of the state would decide otherwise." *Licci ex rel. Licci v. Lebanese Can. Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2014) .  Accordingly, federal courts across the country, relying on the numerous appellate decisions cited above, have held that unjust enrichment is not an independent claim under Texas law.  *See Conradt v. NBC Universal, Inc.*, 536 F. Supp. 2d 380, 399 (S.D.N.Y. 2008) ("under Texas law, unjust enrichment is not an independent cause of action . . . ."); *In re Primera Energy, LLC*, 579 B.R. 75, 184 (Bankr. W.D. Tex. 2017), *aff'd sub nom. Alfaro v. Reiley*, No. 5:18-CV-0329-JKP, 2019 WL 4765385 (W.D. Tex. Sept. 27, 2019) ("Plaintiffs have plead [sic] unjust enrichment as a separate cause of action; unjust enrichment, however, is not an independent cause of action but rather a theory of recovery. "); *Vigo v. Reed*, No. 11-Civ.-2044-G, 2013 WL 786925, at *4 (N.D. Tex. Mar. 4, 2013) ("Texas law does not afford an independent cause of action for unjust enrichment."); *In re Clorox Consumer Litig.*, No. 12-00280 SC, 2013 WL 3967334, at *12 (N.D. Cal. July 31, 2013) ("sid[ing] with the majority of courts" in concluding that unjust enrichment is not an independent claim under Texas law.). Because Texas does not recognize unjust enrichment as an independent cause of action, Plaintiffs' unjust enrichment claim should be dismissed.[5]

---

[5] For the reasons why unjust enrichment claims under the laws of any other state must be dismissed see MLB Defendants' Brief at 19, 24–25.

## CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Complaint in its entirety, with prejudice.[6]

Dated:  February 21, 2020

Respectfully submitted,

/s/   *Hilary L. Preston*

Michael C. Holmes (*admitted pro hac vice*)
2001 Ross Avenue
Suite 3900
Dallas, TX 75201
Tel: 214-220-7814
Fax: 214-999-7814
mholmes@velaw.com

Clifford Thau
Hilary L. Preston
VINSON & ELKINS LLP
1114 Avenue of the Americas
32nd Floor
New York, NY 10036
Tel:  212-237-0000
Fax:  917-849-5342
cthau@velaw.com
hpreston@velaw.com

*Attorneys for Houston Astros, LLC*

---

[6] To the extent that the complaint in *Clifford* v. *Major League Baseball, et al.* (20 Civ. 1000) remains operative despite Clifford joining the Amended Complaint in this case, it should be dismissed for the same reasons.